United States District Court
For the Northern District of California

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6               FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   DENISE R. MALIK,                          No. C 03-04362 CW

9            Plaintiff,                        ORDER DENYING
                                              PLAINTIFF'S
10       v.                                    MOTION FOR
                                              SUMMARY JUDGMENT
11   JO ANNE B. BARNHART,                      AND GRANTING
     Commissioner of Social Security,         DEFENDANT'S CROSS
12                                            MOTION FOR
             Defendant.                        SUMMARY JUDGMENT
13
     _____/
14

15

16       Plaintiff Denise R. Malik moves for summary judgment or

17   remand.  Defendant Jo Anne B. Barnhart, Commissioner of the

18   Social Security Administration, opposes the motion and cross-

19   moves for summary judgment.  Having considered all of the papers

20   filed by the parties, the Court DENIES Plaintiff's motion and

21   GRANTS Defendant's cross-motion for summary judgment.

22                            BACKGROUND

23   I.   Procedural History

24       On June 9, 2000, Malik[1] applied for Supplemental Security

25   Income benefits under Title XVI of the Social Security Act (the

26   Act), 42 U.S.C. § 1381 et seq., alleging that her disability

27   _____

28       [1] Malik is identified by the last name "Oliver" throughout
     much of the record but provides no explanation for the change of
     name.

began on December 29, 1988, due to psoriasis that caused pain and numbness in her fingers.  (Administrative Record (AR) 93).  Her application was denied initially and on reconsideration.  (AR 79-82, 85-88).  On May 21, 2002, a hearing was held before an administrative law judge at which Malik, who was represented by a non-attorney, appeared as a witness.  (AR 42-76).  On August 23, 2002, the ALJ issued his ruling that, although Malik was precluded from work requiring fine manipulation of objects or sensation in the fingertips, she was not disabled within the meaning of the Act because she retained the residual functional capacity to perform unskilled medium, heavy and very heavy work.  (AR 25-37).  On October 22, 2002, Malik filed a request for review with the Social Security Appeals Council.  (AR 21).  On July 25, 2003, the Appeals Council affirmed the ALJ's decision.  (AR 4-6).  On September 26, 2003, Malik filed the instant action, claiming that the ALJ erred in finding that she could do medium, heavy and very heavy work.

II.  Factual History

Malik was thirty-seven years old at the time she filed her application for Social Security benefits.  She attended school through the eleventh grade.  (AR 47).  Malik worked for unspecified time periods in 1979 for Church's Fried Chicken; in 1985, 1986 and 1988 for a packaging company; and in 1989 for McDonalds and another unspecified employer.  (AR 98-99).  Malik has not been employed since 1989.  She lives in an apartment with her husband, her twenty-one year old daughter, her three year old daughter and her sister.  (AR 46).

United States District Court

For the Northern District of California

A. Medical Evidence

On May 10, 1996, Malik went to Kaiser Permanente and complained of pain in her left index finger. (AR 283). A physical examination revealed a detached fingernail. Her fingernail was removed and papilloma[2] of the distal nailbed was noted. On May 14, 1996, an x-ray of her left fingers revealed no significant abnormalities. On May 20, 1996, Dr. Tenner noted Malik had pus underneath her fingernails. (AR 277). A treatment note dated May 23, 1996 indicated her finger improved with medications such as Cipro,[3] though she was still having moderate pain at the proximal end of her finger. (AR 274-75). Repeat x-rays of her left fingers revealed no significant abnormalities or changes, ruling out osteomyelitis.[4] (AR 276). Malik was diagnosed with a localized form of pustular psoriasis in her left index finger which did not involve an infection. (AR 274). On June 26, 1996, Dr. Tenner noted that pustular psoriasis was beginning to flare in her right hand. (AR 271). Various medications were prescribed in varying dosages,

---

[2] Papilloma is a circumscribed, benign tumor projecting from the surrounding surface. Stedman's Medical Dictionary, 27th ed., 1307 (2000).

[3] Cipro is a synthetic broad spectrum antimicrobial agent for oral administration. Physician's Desk Reference, 57th ed., 875 (2003).

[4] Osteomyelitis is an inflammation of the bone marrow and adjacent bone. Stedman's Medical Dictionary, 27th ed., 1284 (2000).

3

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

including Prednisone[5] and Methotrexate.[6]  (AR 264, 247, 253).  On February 19, 1997, Malik reported she was no better and no worse.  (AR 249).  On March 20, 1997, Dr. Tenner commented that her psoriasis was better with the Methotrexate, although Malik believed it made the psoriasis worse and more painful and she did not want to continue taking it.  (AR 245).  On April 21, 1997, Dr. Rik Smith noted that her psoriasis was "okay," with no joint swelling.  (AR 239).  On August 20, 1997, an examination by Dr. Chitra Reddy revealed right thumb swelling and pain at the first proximal interphalangeal joint.  Dr. Reddy noted that Malik had self-discontinued all of her medications, such as Prednisone and Methotrexate, because she thought they were making her psoriasis worse.  (AR 229).

On September 26, 1997, Malik complained of bilateral hand pain of two weeks duration and occasional numbness after using her hands.  (AR 223).  Malik was referred to rheumatology for a nerve conduction study.  Treatment notes of December 18, 1997 indicate fungus was growing under Malik's fingernails.  (AR 215).  A nerve conduction study performed in February, 1998 was normal.  (AR 211, 214).  In June, 1998, Malik was placed on

---

[5] Prednisone is a dehydrogenated analogue of cortisone with the same actions and uses.  Cortisone is a steroid-like compound that influences the nutrition and growth of connective tissues. Stedman's Medical Dictionary, 27th ed., 417, 754 (2000).

[6] Methotrexate is used to treat arthritis and rheumatoid arthritis.  Stedman's Medical Dictionary, 27th ed., 1107 (2000).

4

**United States District Court**

For the Northern District of California

Thioguanine.[7]  (AR 205).  On September 14, 1998, a treatment note written by Dr. Tenner indicates Malik had taken Thioguanine for only a few days in July and then had discontinued it.  (AR 201-02).  Dr. Tenner indicated that Malik did not do well on oral prescriptions due to compliance problems and side effects, though no specific side effects were noted.  (AR 201-02).

Also on September 14, 1998, it was determined that Malik was pregnant and she was referred to genetics counseling because of the potential risk of birth defects from the use of Thioguanine. Her Thioguanine prescription was discontinued and no other oral medications were prescribed for her psoriasis during her pregnancy.  (AR 185, 191).  Malik continued to complain of bilateral hand pain throughout her pregnancy.  (AR 181). Treatment records indicate a prior history of substance abuse and Malik tested positive for cocaine during her pregnancy according to urinalysis reports dated December 2, 1998 and March 25, 1999.  (AR 171, 178, 324).  Malik gave birth on March 31, 1999.  (AR 176-77).

On September 9, 1999, Dr. Selby saw Malik in urgent care and noted that she was off her medications and was not doing well. Dr. Selby noted that lesions on her fingernails were quite striking.  (AR 172).  On September 27, 1999, Malik was seen by Kaiser Union City dermatology and diagnosed with psoriasis of the second and third fingers of her right hand.  (AR 173).  Dr.

---

[7] Thioguanine is an agent used for leukemias and nephrosis. Stedman's Medical Dictionary, 27th ed., 1827 (2000).  Nephrosis is degeneration of the kidneys.  Id. at 1192.

United States District Court

For the Northern District of California

Hardy recommended intramuscular steroids.  Malik declined, indicating she feared it might cause depression.  (AR 173).  Dr. Hardy advised that oral medications would not be prescribed for psoriasis without effective birth control.  (AR 173).  On December 11, 1999, Malik went to the urgent care clinic complaining of fingernail fungal infection and requested pain medication.  She was prescribed Tylenol #3.[8]  (AR 170).  X-rays of Malik's hands on December 23, 1999, revealed no evidence of psoriatic arthropathy,[9] yet changes in the tufts of the distal phalanges of the right second and third fingers and left thumb were noted.  (AR 166).  On June 2, 2000, Malik started Methotrexate injections.  (AR 154).  A July 11, 2000 dermatology note indicates that Malik's psoriasis was better.  (AR 152).

On September 16, 2000, the Social Security Administration referred Malik for a consultative examination conducted by Dr. Anthony Gabriel.  Dr. Gabriel detected severe onychomycosis[10] at the fingertips and nailbeds of the second and third fingers of the right hand.  He indicated that there was no evidence of acute inflammation.  Dr. Gabriel conducted a test of Malik's upper extremities, including her wrists and hands.  He indicated

---

[8] Tylenol #3 is pain relief medication containing a moderate dose of codeine, a narcotic pain reliever.  Physician's Desk Reference, 57th ed., 2507 (2003).

[9] Arthropathy is any disease affecting the joint.  Stedman's Medical Dictionary, 27th ed., 150 (2000).

[10] Onychomycosis is a very common fungus infection of the nails, causing thickening, roughness, and splitting.  Stedman's Medical Dictionary, 27th ed., 1262 (2000).

**United States District Court**
For the Northern District of California

Malik's dorsiflexion[11] to be 60/60° bilaterally and palmar flexion to be 70/70° bilaterally, and her finger approximation to be intact.  Dr. Gabriel tested Malik's grip strength and found it to be 20/12 lbs., right over left.  Dr. Gabriel's clinical findings were that Malik had some swelling around the digits causing some pain when manipulating fine objects, but that she had generally good strength of the right hand, and retained complete use of the fingers of the right hand.  Dr. Gabriel stated that Malik would be unable to perform activities requiring fine manipulation of objects or sensation in the fingertips of the right hand, but otherwise she had no limitations.  (AR 284-87).

On November 21, 2000, three non-examining doctors employed by the State Disability Determination Services (DDS) reviewed the medical evidence in the record and found that Malik did not have a medically determinable impairment.  (AR 294-301).

In March, 2001, Malik went to Kaiser complaining of muscle pain.  She was referred to rheumatology for evaluation.  Malik reported that she had stopped taking birth control pills but that she was not sexually active.  She continued to receive Methotrexate.  (AR 357).  On May 11, 2001, Dr. Becker reduced the dosage of Methotrexate.  Dr. Becker's note dated May 23, 2001 indicated Malik's psoriasis had been much improved with Methotrexate, but also that she was inconsistent in getting the

---

[11] Dorsiflexion is the upward movement of the foot or toes or of the hand or fingers.  Stedman's Medical Dictionary, 27th ed., 537 (2000).

injections and follow up laboratory studies.  (AR 355).

However, Dr. Becker noted that Malik reported that she might be

pregnant.  On May 25, 2001, Dr. Becker discontinued the

Methotrexate until June 8, 2001, after Malik had taken a

pregnancy test.  (AR 356, 354).  Dr. Becker's note indicated

that Malik was to be given monthly pregnancy tests and he was to

be notified if Malik did not hold to the monthly schedule.  (AR

354).

On June 11, 2001, Malik was evaluated by Dr. Stephanie Chu

for complaints of hand pain.  Physical examination revealed mild

diffuse swelling and increased warmth.  There was no indication

of any joint problems.  Dr. Chu stated that Malik's hand pain

could not be explained, yet it was clearly not classic for

psoriatic arthropathy.  (AR 351-52).  An x-ray of Malik's right

hand dated June 11, 2001 revealed no abnormality except a

discrete radiolucent area in the terminal phalanx of the index

finger which was probably developmental.  (AR 366).  A follow-up

examination by Dr. Chu on July 9, 2001, again revealed mild

diffuse swelling.  (AR 349-50).  On August 22, 2001, a Kaiser

doctor noted that Malik's left index fingernail was swollen with

the nail lifted fifty-percent off.  (AR 347).  On September 8,

2001, Dr. Chu noted that Malik had marked psoriatic scaling and

onychomycosis on multiple fingertips.  (AR 343).  In a Medical

Assessment of Ability to Do Work Related Activities (Physical)

dated November 9, 2001, Dr. Chu opined that Malik would be

capable of lifting and/or carrying less than ten pounds over the

course of less than one-third of an eight-hour day, and she

would be unable to perform the fine motor functions required to handle, feel, push, or pull.  Dr. Chu also opined that Malik had no limitations in standing, walking, sitting, reaching, seeing, hearing, or speaking, no postural limitations, and no environmental restrictions.  (AR 319-20).  On January 22, 2002, Dr. Chu noted that Malik had not been on any medications for two weeks because she lost them when her luggage was stolen.  (AR 333).

In a letter dated March 29, 2002 to Malik's representative, Dr. Chu states, "This is a patient with unusual hand pains . . . I do believe that her pain and discomfort, due to the psoriatic process in her nails and her fingertips, are significant enough that they preclude her from doing most types of work. Certainly, any type of work that would involve constant use of the hands is not possible for this patient."  (AR 316-18).

To assess Malik's allegation of a mental impairment due to depression, she was referred for a psychological evaluation by psychologist Jennifer B. Kirkland, Ph.D., on October 11, 2000. Dr. Kirkland noted that Malik did not put much effort into the evaluation, and generally did not make it past the introductory items on the psychological tests she was given.  Dr. Kirkland observed that Malik would spontaneously give a correct answer and then go back and change it to an incorrect answer.  Dr. Kirkland indicated that Malik's low performance on the tests was suggestive of malingering and her low effort and motivation rendered testing essentially invalid and not indicative of her current functioning.  Dr. Kirkland also noted inconsistencies in

Malik's reporting of her medical condition, raising questions as to her credibility.  For instance, Dr. Kirkland noted that she observed Malik scratch and pick at the scabs on the fingers and nails of her right hand throughout the testing, despite the fact that she reported her hand was often too sensitive to use for anything.  Dr. Kirkland diagnosed Malik with malingering and substance abuse of alcohol, recreational street drugs and pain killers.  Dr. Kirkland acknowledged the difficulty in assessing Malik's day-to-day functional capacity on the basis of a single consultation.  However, she opined that Malik could be expected to understand, carry out and remember simple instructions.  (AR 289-92).

B. Hearing Before the ALJ

At the May 21, 2002 hearing before the ALJ, Malik testified that she was currently unable to work due to pain in her hands. She testified that she was unable to do any household chores, cooking, shopping, go to church, go to the movies, play sports or do any activities with her daughter.  (AR 49-51).  Malik testified that during a typical day she usually sat in the front yard and watched children play.  (AR 51).  She testified that she was sometimes unable to get herself dressed and undressed and could not put on or tie her shoes.  She also testified that she had to bandage her hands before putting on clothes because her nails clung to them.  (AR 55-56).  She was wearing a splint at the hearing which she stated she wore to keep pus from draining out of her fingernails and to protect her nails and fingers.  (AR 56-57).  She stated that she did not cook because

her hands got numb and she had been dropping plates and cups a couple of days before the hearing. (AR 57). She stated that in order to eat she had to cradle a spoon between her thumb and index finger. (AR 58). She testified that her hand problem first made it hard to work in 1996 after the doctor removed her fingernail. (AR 59). She also stated that her hands were so tender that anytime she touched or picked up an object she was in pain. (AR 59-60). She stated she had pain even without touching things, though it was not as bad. (AR 60). She also testified that she could pick up objects but could not hold them for too long. (AR 68-69). She stated there was nothing she could do at home to make her pain better. (AR 69). She stated she had been taking Methotrexate pills but they did not help. She testified that she stopped getting Methotrexate injections because it was not doing anything for her. (AR 69).

C. The ALJ's Decision

The ALJ employed the five-step sequential process to evaluate Malik's claim of disability. 20 C.F.R. §§ 404.1520(b)-(f). At step one, the ALJ concluded that Malik's work activity in 1989 did not constitute substantial gainful activity and she had not worked since. (AR 26).

At step two, the ALJ found that Malik's psoriasis was a severe impairment because it resulted in difficulty with sensation in the fingertips of her right hand and limitation in

her ability to perform fine manipulation with her right hand.[12]

At step three, the ALJ found that Malik's impairment was not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 (Social Security Ruling (S.S.R.) 96-6p).  (AR 32).  The ALJ found that, although Malik has a long history of pustular psoriasis, it has been confined primarily to several fingers of her right hand and there is no indication that her condition does not respond to prescribed treatment.  (AR 32).

At step four, the ALJ found that Malik had no past relevant work so he proceeded to step five.  At step five, to decide whether Malik could do her past relevant work or other work existing in significant numbers in the national economy, the ALJ considered the medical evidence to assess Malik's residual functional capacity (RFC).  The ALJ determined that Malik was precluded from work requiring fine manipulation of objects or sensation in the fingertips, but that she was not limited in her capacity for gross manipulation or reaching with either upper extremity or standing, walking, sitting, lifting, carrying, pushing or pulling.  Relying on the Medical Vocational Guidelines (Grids), the ALJ found that, although Malik's limitation significantly narrowed the potential occupational base of unskilled sedentary and light work, she was not disabled because the potential occupational base of unskilled medium,

United States District Court

For the Northern District of California

---

[12] At step two, the ALJ analyzed whether Malik's claim of depression was severe and concluded that it was not.  Malik does not contest this conclusion.  Therefore, the Court will not address the ALJ's analysis of Malik's depression.

heavy and very heavy work remained intact.  (AR 35).

To support his conclusion, the ALJ noted that Malik had made a number of inconsistent statements which brought her credibility into question.  The ALJ found that Malik's allegation of constant pain was not supported by the evidence. The ALJ stated that, although treating physicians had indicated that some pain could reasonably be expected due to her psoriasis, several doctors had expressed concerns that Malik had been abusing pain medications.  The ALJ noted that there was no indication that her condition did not respond to prescribed treatment and there was evidence that Malik was not compliant in following prescribed treatment.  The ALJ also pointed out that Malik had failed to keep no fewer than twenty-five appointments, which suggested her symptoms may not have been as limiting as she claimed.  In addition, the ALJ noted that Malik's work history revealed that she worked only sporadically prior to the alleged disability onset date, which raised questions as to whether her continuing unemployment was actually due to medical impairments.

The ALJ stated that he afforded Dr. Chu's opinion little weight because it was not supported by the record, particularly with respect to Malik's ability to lift or carry.  However, the ALJ indicated that he had not entirely rejected Dr. Chu's opinion and had incorporated some of her limitations into the RFC he adopted. The ALJ noted the possibility that a doctor may express an opinion in an effort to assist a patient with whom she sympathizes or that a doctor may provide such a note in

order to avoid tension with the patient.  The ALJ concluded that because Dr. Chu's opinion departed substantially from the rest of the evidence, such a motive may have been likely.  The ALJ "afforded significant weight" to Dr. Gabriel's opinion, "as it is well-supported by the objective evidence as well as the other substantial evidence of record, and supported a finding of not disabled."  (AR 33-34).

LEGAL STANDARD

A court cannot set aside a denial of benefits unless the Commissioner's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986); Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ.  Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  In short, a court must weigh the

14

evidence that supports the Commissioner's conclusions and that which does not.  <u>Martinez</u>, 807 F.2d at 772.

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be upheld even when there is evidence on the other side, <u>Hall v. Secretary</u>, 602 F.2d 1372, 1374 (9th Cir. 1979), or when the evidence is susceptible to more than one rational interpretation.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial evidence, the findings of the Commissioner as to any fact will be conclusive.  42 U.S.C. § 405(g); <u>Vidal v. Harris</u>, 637 F.2d 710, 712 (9th Cir. 1981).

Under the Social Security Act, "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423 (d)(1)(A).  The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work."  42 U.S.C. § 423(d)(2)(A).  In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled within the meaning of the Social Security Act, the Social Security

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Regulations set out a five-step sequential process.  20 C.F.R. §
404.1520 (b)-(f); <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1395 (9th
Cir. 1991); <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir.
1998).  The burden of proof is on the claimant in steps one
through four.  <u>Sanchez v. Secretary of Health and Human Servs.</u>,
812 F.2d 509, 511 (9th Cir. 1987).  In step one, the claimant
must show that she or he is not currently engaged in substantial
gainful activity.  20 C.F.R. § 404.1520(b).  In step two, the
claimant must show that he or she has a "medically severe
impairment or combination of impairments" that significantly
limit his or her ability to work.  20 C.F.R. § 404.1520(c);
<u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); <u>Smolen v. Chater</u>, 80
F.3d 1273, 1290 (9th Cir. 1996).  If the claimant does not, he
or she is not disabled.  Otherwise, the process continues to
step three for a determination of whether the impairment meets
or equals a "listed" impairment which the regulations
acknowledge to be so severe as to preclude substantial gainful
activity.  <u>Bowen</u>, 482 U.S. at 141; 20 C.F.R. § 404.1520(d); 20
C.F.R. § 404, Subpt. P, App.1.  If this requirement is met, the
claimant is conclusively presumed disabled; if not, the
evaluation proceeds to step four.  At step four, it must be
determined whether the claimant can still perform "past relevant
work."  <u>Bowen</u>, 482 U.S. at 141; 20 C.F.R. § 404.1520(e).  If the
claimant can perform such work, he or she is not disabled.  If
the claimant meets the burden of establishing an inability to
perform prior work, the burden of proof shifts to the
Commissioner for step five.  At step five, the Commissioner must

16

show that the claimant can perform other substantial gainful

work that exists in the national economy.  Bowen, 482 U.S. at

141; 20 C.F.R. § 1520(f).

DISCUSSION

Malik moves for summary judgment or remand on the grounds

that: (1) the ALJ improperly rejected the opinion of her

treating physician, Dr. Stephanie Chu, with insufficient

substantive analysis; (2) the ALJ failed to follow the SSA's own

rules and regulations in assessing Malik's RFC; (3) the ALJ

failed to obtain vocational expert testimony, but instead relied

on the Medical Vocational Guidelines despite the presence of

significant non-exertional impairments; and (4) the ALJ's key

findings are not supported by substantial evidence.

I.   Opinion of the Treating Physician

Citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998),

Malik argues that the ALJ improperly rejected the opinion of Dr.

Chu, her treating physician, because the ALJ failed to set forth

specific and legitimate reasons for doing so, and instead

adopted the opinion of Dr. Gabriel, whom Malik saw only once.

Malik also argues that Dr. Chu's conclusion that Malik has

significant limitations in lifting and constant use of her hands

has a strong evidentiary basis in the record.

As a general rule, the opinion of a treating doctor should

be given more weight than the opinion of doctors who do not

treat the claimant.  Winans v. Bowen, 853 F.2d 643, 647 (9th

Cir. 1987). Where a treating physician's opinion is contradicted

by another doctor, the Commissioner may reject the treating

United States District Court
For the Northern District of California

physician's opinion, but must provide "specific, legitimate reasons" supported by substantial evidence in the record for doing so.  <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989); <u>Murray v. Heckler</u>, 722, F.2d 499, 502 (9th Cir. 1983). The opinion of a non-examining physician alone will not constitute substantial evidence that justifies the rejection of the opinion of either a treating or examining physician.  <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984).  However, the opinion of a non-examining physician in conjunction with medical evidence and contradictory reports from examining physicians constitutes substantial evidence for rejecting a treating physician's opinion.  <u>Magallanes</u>, 881 F.2d at 751-52; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1042-43 (9th Cir. 1995).

Although the ALJ stated that he gave Dr. Chu's opinion little weight, he only rejected the part of her opinion regarding Plaintiff's ability to lift and carry.  The ALJ did provide specific, legitimate reasons for rejecting this part of Dr. Chu's opinion: it departed substantially from the rest of the evidence.  There is no evidence that Dr. Chu tested Malik's hand strength or her functional abilities.  Dr. Gabriel tested Malik's grip strength and her upper extremities.  He found that she had some swelling around the digits causing some pain when manipulating fine objects, but that she had generally good strength of the right hand, and retained complete use of the fingers of the right hand.  He stated that Malik would be unable to perform activities requiring fine manipulation of objects or

18

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   sensation in the fingertips of the right hand, but otherwise she

2   had no limitations.  The ALJ also noted that the non-examining

3   DDS physicians' opinions supported Dr. Gabriel's.  Further, even

4   Dr. Chu indicated that Malik's hand pains were unusual and very

5   difficult to explain.

6       Accordingly, the ALJ did not err in rejecting Dr. Chu's

7   opinion regarding Plaintiff's ability to lift and carry in favor

8   of Dr. Gabriel's.

9   II.  Residual Functional Capacity

10      Malik argues that the ALJ erred by not specifically

11  addressing her capacity for using her hands on a sustained basis

12  over the course of a work day, including forceful gripping,

13  lifting, or carrying heavy objects.

14      A plaintiff's RFC is the most he or she "can still do

15  despite his [or her] limitations."  20 C.F.R. § 416.945(1).  It

16  is his or her maximum ability to perform sustained work in an

17  ordinary work setting on a regular and continuing basis, eight

18  hours a day for five days a week.  Id.  The RFC assessment must

19  first identify the individual's functional limitations or

20  restrictions and assess his or her work-related abilities on a

21  function-by-function basis.  S.S.R. 96-8P at *1.  Only after

22  that may an individual's RFC be expressed in terms of the

23  exertional levels of work: sedentary, light, medium, heavy and

24  very heavy.  Id.

25      The ALJ found that Malik could not perform work requiring

26  fine manipulation of objects or sensation in the fingertips of

27  the right hand, but that she is not limited in gross

28
                                19

manipulation of objects or in reaching with either upper

extremity, lifting, carrying, pushing or pulling.  To support

this conclusion, the ALJ relied on Dr. Gabriel's opinion,

stating that "it is well supported by the objective evidence as

well as the other substantial evidence of record . . ."  (AR

34).  The ALJ also based his finding on Malik's lack of

credibility.

Malik does not dispute the ALJ's conclusions regarding her

credibility.  However, she does dispute the ALJ's reliance on

Dr. Gabriel's opinion.

As stated above, however, the ALJ did not err in relying on

Dr. Gabriel's opinion because it is supported by substantial

evidence in the record.  Dr. Chu did conclusorily state that

Malik was limited in lifting and carrying; as stated above, the

ALJ did not err in discounting that part of her opinion.  Dr.

Chu did not mention Malik's ability to grip.  Thus, the ALJ did

not err in finding that Malik retained the ability to perform

unskilled medium, heavy and very heavy work despite her

impairments, and properly assessed Malik's RFC.

III.     Medical Vocational Guidelines

Malik argues that the ALJ failed to consider her non-

exertional limitations such as in the constant use of her hands

or the performance of tasks requiring prolonged or repeated

forceful gripping.  Malik argues that, had these additional non-

exertional limitations been included in her RFC, at step five of

his analysis, the ALJ could not have relied on the Medical

Vocational Guidelines (Grids), but would have had to consult a

**United States District Court**

For the Northern District of California

vocational expert to determine whether jobs existed in significant numbers in the economy to accommodate her disability.

The ALJ found that Malik was precluded from work requiring fine manipulation of objects or sensation in the fingertips and that, although this limitation significantly narrowed the potential occupational base of unskilled sedentary and light work, the potential occupational base of unskilled medium, heavy, and very heavy work remained intact.  Relying on the guidelines set forth in S.S.R. 85-15, the ALJ found that, because Malik's nonexertional limitations did not significantly compromise her ability to perform work at all exertional levels, a finding of not disabled was appropriate.

The Medical-Vocational Guidelines are administrative tools that the Commissioner may use at step five of the disability evaluation.  Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).  Based on age, education, work experience, and "exertional capacity," the guidelines determine the employability of claimants with "substantially uniform levels of impairment."  Id.; see also 20 C.F.R. pt. 404, subpt. P, app. 2. However, the ALJ may rely on the guidelines only when they "accurately and completely describe the claimant's abilities and limitations."  Burkhart, 856 F.2d at 1340; see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999).  If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional (not strength-related) limitations that are

**United States District Court**
For the Northern District of California

not covered by the grids.  20 C.F.R., pt. 404, subpt. P., app. 2 § 200.00(d),(e).  When a claimant suffers from non-exertional impairments that are "sufficiently severe" to significantly limit the range of work permitted by his or her exertional abilities, the guidelines are inapplicable.  <u>Tackett</u>, 180 F.3d at 1102.  In such instances, the ALJ must consider the testimony of a vocational expert and identify specific jobs that are within the claimant's capabilities.  <u>Burkhart</u>, 856 F.2d at 1340.

In S.S.R 85-15, the SSA indicated that the loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy and very heavy ranges of work.  S.S.R. 85-15 at *7.  S.S.R. 85-15 also provides that a vocational expert would not ordinarily be required where a person has a loss of ability to feel the size, shape, temperature, or texture of an object by the fingertips, because this is a function required in very few jobs.  <u>Id.</u>  As stated above, the ALJ did not err in finding that Malik had no other limitations.  There is no evidence that Malik could not perform tasks requiring prolonged or repeated forceful gripping, as Malik argues.  Because Malik's non-exertional impairment is not severe enough to limit significantly her range of work, the ALJ's use of the grids was proper and there was no need to call a vocational expert.

IV. Substantial Evidence

Plaintiff argues that the ALJ's finding that Plaintiff is totally unrestricted and able to perform work at every

United States District Court

For the Northern District of California

22

exertional level is not supported by substantial evidence.  In support of this argument, Plaintiff cites the medical evidence and Plaintiff's testimony that she has significant limitations in the use of her hands due to pain caused by the psoriatic conditions.

As discussed previously, the ALJ correctly relied upon Dr. Gabriel's opinion in determining Plaintiff's RFC.  Additionally, the ALJ found Plaintiff's credibility to be questionable. Although Plaintiff does not dispute the ALJ's finding regarding her lack of credibility, it is appropriate to discuss it here because she relies on her testimony to support this claim.

The ALJ's determination regarding Plaintiff's lack of credibility was supported by substantial evidence.  Dr. Kirkland reported that Plaintiff did not put much effort into her psychological testing and that she would even spontaneously give a correct answer but then go back and change it to an incorrect answer.  Dr. Kirkland opined that Plaintiff's performance was indicative of malingering which rendered her testing essentially invalid.  Dr. Kirkland noted inconsistencies in Plaintiff's reporting of her medical condition which also raised questions regarding her credibility.  Dr. Kirkland reported that Plaintiff admitted to substance abuse of alcohol, recreational street drugs and pain killers.  Furthermore, many notations in Plaintiff's medical records questioned whether Plaintiff was exaggerating her pain in order to obtain pain killers.  Because the ALJ's finding regarding Plaintiff's credibility is supported by substantial evidence, Plaintiff cannot rely on her testimony

United States District Court
For the Northern District of California

to substantiate her argument that she could not use her hands due to pain.

In addition, Defendant argues that a controlled impairment, or one that is reasonably controllable, cannot be used as a basis for disability.  Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (finding proper ALJ's decision not to consider claimant's controlled impairments); Sample v. Schweiker, 694 F.2d 639, 643 (9th Cir. 1982) (proper inquiry is whether impairment is amenable to control).  Malik does not respond to this argument.

The ALJ found that Malik was not compliant with the medication regimen that had been successful in treating her impairment based on the following evidence.  On March 20, 1997, Dr. Tenner indicated that Malik's psoriasis had improved with Methotrexate; however, Malik indicated she believed it made the psoriasis worse.  On August 20, 1997, Dr. Reddy noted that Malik had self-discontinued her Prednisone and Methotrexate because she thought they were making her psoriasis worse.  On September 14, 1998, Dr. Tenner indicated that Malik took Thioguanine for only a few days in July and then discontinued it.  He stated that Malik did not do well on oral medications due to compliance problems.  Dr. Becker's treatment note dated July 11, 2000 indicated that Malik's psoriasis had improved following Methotrexate injections.  Dr. Becker's note dated May 23, 2001 indicated Malik's psoriasis had been much improved with Methotrexate but she was inconsistent in getting the injections. This evidence substantiates the ALJ's finding that Malik was not

1   compliant with her prescribed treatment.

2       Therefore, Plaintiff's claim that the ALJ's evidentiary

3   findings is not supported by substantial evidence is DENIED.

4                           CONCLUSION

5       For the foregoing reasons, Malik's motion for summary

6   judgment or remand is DENIED.  Defendant's cross motion for

7   summary judgment

8

9

10  is GRANTED.  Judgment shall enter accordingly.  Each party shall

11  bear her own costs.

12      IT IS SO ORDERED.

13

14  Dated: 5/18/05                /s/ CLAUDIA WILKEN
                                  CLAUDIA WILKEN
15                                United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28